UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEMONTAE WATERS,<br><br>  Plaintiff,<br>v.<br><br>DR. VICKI BLOOMBERG, LT. SAAS &<br>NURSE ANDREA,<br><br>  Defendants. | Civil Action No.<br>3:19-CV-00812 (CSH)<br><br>JUNE 3, 2019 |

## INITIAL REVIEW ORDER

**HAIGHT, Senior District Judge:**

Plaintiff Demontae Waters, a prisoner currently incarcerated at the Bridgeport Correctional Center, has filed a *pro se* civil rights complaint against Defendants Dr. Vicki Bloomberg, Lt. Saas, and Nurse Andrea presumably for deliberate indifference to serious medical needs. Doc. 1 ("Compl.") at 1, 5–7. For the following reasons set forth in this initial review order, the Court will allows his claims to proceed against Dr. Bloomberg and Nurse Andrea.

### I.  STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)–(2) (2012). Although highly detailed allegations are not required, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than the unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

"[W]hether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663–64. When "well-pleaded factual allegations" are present, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Factual disputes do not factor into a plausibility analysis under *Iqbal* and its progeny.

"Although all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). See also *Amaker v. New York State Dept. of Corr. Servs.*, 435 F. App'x 52, 54 (2d Cir. 2011) (same). Accordingly, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted)). Consequently, "[t]hreadbare recitals of the elements of a cause

---

[1] The Second Circuit has consistently adhered to the United States Supreme Court's plausibility standard set forth in *Iqbal*. *See, e.g., Giunta v. Dingman,* 893 F.3d 73, 79 (2d Cir. 2018); *Bd.-Tech Elec. Co. v. Eaton Corp.,* 737 F. App'x 556, 558 (2d Cir. 2018); *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017).

of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

With respect to *pro se* litigants, it is well-established that "[*p*]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*)). See also *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (same)*; Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants); *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (declaring that where the plaintiff proceeds *pro se*, a court is "obliged to construe his pleadings liberally") (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[].").

Despite being subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). Nor may the Court "invent factual allegations" that the plaintiff has not pleaded. *Id.*

3

## II.  FACTUAL ALLEGATIONS

Plaintiff Demontae Waters currently requires a colostomy bag due to a gunshot wound sustained on May 24, 2018.  Compl. at 10–11.  He has continually experienced "extreme pain," presumably due to complications regarding his colostomy bag.  Compl. ¶¶ 1–3.[2]

In February 2019, he informed Nurse Andrea and Dr. Vicki Bloomberg of this pain and that he felt this pain on a daily basis.  *Id.*  However, he alleges the Defendants ignored his complaints and exacerbated his condition, resulting in "unbearable" pain that increases throughout the day every day.  Compl. ¶¶ 4–6.  He was sent to St. Vincent's Hospital in March 2019 according to a medical history chart stating that it was an emergency hospital trip for "[l]ower abdominable pain becoming severe."  Compl. at 11.  He continues to have ongoing lower stomach and back pain.  *Id.* ¶ 15.

Plaintiff's allegations regarding a reverse colostomy surgery are somewhat unclear, but the Court understands the facts to be as follows: Dr. Bloomberg had confirmed that Plaintiff was scheduled for the surgery to remove his temporary colostomy bag in February 2019, but she has since denied him permission to do the surgery.  *Id.* ¶¶ 8–11.  In fact, Plaintiff had even signed releases for Bridgeport Hospital for the surgery.  *Id.*  Timeliness of surgery matters because delay makes the surgery harder to do successfully.  *Id.* ¶ 10.

In addition, Nurse Andrea refused to empty his colostomy bag in February, March, and April, allowing his bag to remain full for three days at a time.  *Id.* ¶¶ 1, 4–10.

He also alleges that on May 1, 2019, Lt. Saas placed him in the segregation unit for an altercation that Plaintiff claims he was not involved in.  *Id.* ¶ 12.  Segregation is "hardly ever

---

[2]  The paragraph numbers cited to therein refer to those in the "Statement of Case" section on pages 5–6, 7 of the Complaint.  Multiple paragraph numbers are cited where distinctions between paragraphs are unclear.

cleaned," meaning that it poses a health and safety risk for someone in Plaintiff's condition. *Id.* ¶¶ 12–13. The Court infers from this allegation that the segregation unit's unsanitariness increases the chance of infection and that Plaintiff's condition makes him more susceptible to infections.

Alongside his Complaint seeking monetary damages, [Compl. ¶ 6], Plaintiff moves for the Court to issue an order to show cause for an emergency preliminary injunction to enjoin the Defendants from "continuing to delay and deny [his] reverse colostomy surgery." Doc. 4 at 1. The Court also construes this as a motion for an emergency preliminary injunction.

### III. DISCUSSION

Plaintiff does not explicitly state the federal rights that Defendants have purportedly violated, but due to the nature of his allegations, the Court construes his Complaint as raising claims of deliberate indifference to medical needs in violation of the Eighth Amendment against all Defendants in their official and personal capacities.

#### A. Individual Defendants in their Official Capacities

As to individual defendants acting in their *official* capacities, "the eleventh amendment immunity protects state officials sued for damages." *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) (citing *Kentucky v. Graham*, 473 U.S. 159, 169–70 (1985)). *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (holding that claims for damages against defendants in their official capacities barred by Eleventh Amendment). To the extent that Plaintiff seeks damages from state officials in their official capacity, his § 1983

claims are barred by the Eleventh Amendment and will be dismissed.[3]

B.     **Eighth Amendment Claims of Deliberate Indifference**

The Eighth Amendment's prohibition on cruel and unusual punishment protects against deliberate indifference to a prisoner's serious medical needs by prison officials. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To demonstrate deliberate indifference to medical needs, a plaintiff must allege harmful acts or omissions that deny or delay unreasonably access to needed medical care or wantonly cause infliction of unnecessary pain. *Id.* at 104–06. Accordingly, not all failures by prison staff to provide medical care rise to the level of a constitutional violation. *Id.*; *see also Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). "[A] prisoner must demonstrate more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability." *Smith*, 316 F.3d at 184.

The deliberate indifference standard consists of two prongs: (1) the alleged deprivation must be, objectively, "sufficiently serious" to produce death, degeneration, or extreme pain; and (2) subjectively, the defendant must have been aware of a substantial risk that the inmate would suffer serious harm by defendant's act or omission. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006*); Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

---

[3] If a § 1983 suit against a state official in his or her *official* capacity seeks *money damages*, the state is deemed to be the real party in interest because an award of damages would be paid from the state treasury. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48–49 (1994). Under such circumstances, the action is deemed to be against the state so that the state official is entitled to Eleventh Amendment immunity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

As to the first prong, "[a] 'serious medical need' exists where, objectively, the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Dotson v. Fischer*, 613 F. App'x 35, 38 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Harrison v. Barkly*, 219 F. 3d 132, 136 (2d Cir 2000)).

> When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious[] to support an Eighth Amendment claim.

*Smith*, 316 F.3d at 185 (internal quotation marks omitted).

As to the second, subjective prong, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions:

> To establish deliberate indifference, [the plaintiff] must show that [the defendant] harbored the requisite mental state while he denied . . . treatment. He must show that [the defendant] knew of and disregarded an excessive risk to [plaintiff]'s safety; that he not only was aware of facts from which a reasonable person would conclude [plaintiff] faced an excessive risk, but that he personally actually drew that inference.

*Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (per curiam). *See also Salahuddin*, 467 F.3d at 279–80. Thus, an allegation of mere negligence is insufficient. Rather, the subjective element requires that an inmate allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin,* 467 F.3d at 280.

As to the first prong, the Court finds that Plaintiff has sufficiently alleged an objectively serious medical need. "There is no settled, precise metric to guide a court in its estimation of the

7

seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). However, the Second Circuit has set forth considerations that should guide the analysis. These considerations include (1) whether a reasonable doctor or patient would perceive the medical need in question as "important or worthy of comment or treatment," (2) whether the medical condition significantly affects daily activities, and (3) "the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702–03 (2d Cir. 1998). In evaluating the seriousness of the condition, the Court considers the plaintiff's medical condition at the time he interacted with the defendants. *See El-Hanafi v. United States*, No. 1:13-cv-2072-GHW, 2015 WL 72804, at *15 (S.D.N.Y. Jan. 6, 2015) (dismissing deliberate indifference claim against doctor because plaintiff failed to allege facts showing that condition "was objectively sufficiently serious at the time he saw" the doctor).

Plaintiff's pain appears to meet most of these considerations. He alleges a daily pain that is increasing in severity. Compl. ¶¶ 1–6. The Court also presumes that a reasonable doctor would consider his medical need as "worthy of comment or treatment" given that he had been scheduled for surgery, *id.* ¶¶ 8–10, and that he had been sent on an emergency trip to the hospital due to his pain "becoming severe," *id.* at 11.

As for the second prong, Dr. Bloomberg and Nurse Andrea appear to have the requisite knowledge of Plaintiff's serious medical needs, but Lt. Saas does not. Plaintiff states that he informed Nurse Andrea of his need to empty his colostomy bag and that he was "experiencing extreme pain in his back and stomach" in February 2019. *Id.* ¶¶ 1–3. The Court also infers from the allegations that Plaintiff had repeated his complaints again to Nurse Andrea in March and April 2019 when she refused to empty his colostomy bag for three days at a time. *Id.* ¶¶ 6–8. Plaintiff had similarly informed Dr. Bloomberg of his pain in February 2019. *Id.* ¶¶ 8–10. That she informed

8

Plaintiff that he had been scheduled for surgery that same month suggests that she likely thought Plaintiff was in serious need of medical treatment. However, Plaintiff does not state that Lt. Saas knew or should have known of the health risks of placing Plaintiff in segregation. He does not claim to have informed Lt. Saas of these risks, and nothing in the Complaint suggests that Lt. Saas could have known about the risks from another source. Accordingly, Plaintiff's claims of deliberate indifference to medical needs in violation of the Eighth Amendment may proceed against Dr. Bloomberg and Nurse Andrea but are dismissed against Lt. Saas.

## IV. CONCLUSION AND ORDER

Pursuant to 28 U.S. C. § 1915A, the Court has reviewed the *pro se* prisoner's civil complaint to determine which, if any, claims must be dismissed for failure to state claims upon which relief may be granted and/or attempts to obtain monetary relief against a defendant who is immune from such relief. Based on the foregoing, the Court sets forth its conclusion and Orders.

(1) The Court DISMISSES WITHOUT PREJUDICE any claims of deliberate indifference to medical needs against Lt. Saas. The Clerk is directed to terminate Lt. Saas as a defendant.

(2) All claims against the remaining Defendants in their *official* capacities are DISMISSED.

(3) The following plausible claim against the individual defendants in their *personal* capacities for damages may proceed: Deliberate indifference to serious medical needs against Dr. Bloomberg and Nurse Andrea regarding failure to treat Plaintiff's pain stemming from issues with his colostomy bag; and

(4) The Clerk shall verify the current work addresses for the remaining Defendants with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to each Defendant at the confirmed address within **twenty-one (21) days**

of this Order, and report to the Court on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(5) The Defendants shall file their response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 to 37 shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(7) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(8) In addition to the preceding numbered paragraphs of this Order, and notwithstanding the time limits specified therein, the Clerk of the Court is directed to make arrangements **on an expedited basis** for the U.S. Marshals Service to make personal service forthwith of (a) the Complaint in this action; (b) Plaintiff's motion for a preliminary injunction; and (c) this Order upon the Defendants Vicki Bloomberg and Nurse Andrea.

(9) Defendants Vicki Bloomberg and Nurse Andrea are directed to respond to Plaintiff's motion for an emergency preliminary injunction, [Doc. 4], within **two weeks (14 days)** of being served with this Order, Complaint and Motion for Injunction.

(10) Following filing of the Defendants' responses, as directed in Paragraph 9 of this Order, the Court will make a further Order as to whether a hearing is required on Plaintiff's motion for a preliminary injunction, and if so, the scheduling thereof.

It is SO ORDERED.

Dated: New Haven, Connecticut
      June 3, 2019

                                                */s/ Charles S. Haight, Jr.*
                                                CHARLES S. HAIGHT, JR.
                                                Senior United States District Judge