UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEMONTAE WATERS, | |
| Plaintiff, | Civil Action No. |
| v. | 3:19-CV-812 (CSH) |
| VICKI BLUMBERG & ANDREA CHAMBERLAIN-SWABY, | **JUNE 24, 2020** |
| Defendants. | |

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**HAIGHT, Senior District Judge:**

Plaintiff Demontae Waters ("Plaintiff"), a prisoner currently incarcerated at the MacDougall-Walker Correctional Institution ("MWC"), and who was previously an inmate at Bridgeport Correctional Center ("BCC"), has filed a *pro se* civil rights complaint against Defendants Dr. Vicki Blumberg, Lt. Saas, and Nurse Andrea Chamberlain-Swaby for deliberate indifference to serious medical needs.  Doc. 1 ("Compl.").[1]  Plaintiff's claims generally concern the alleged delay and denial of Plaintiff's colostomy reversal surgery and exacerbation of his condition as a prisoner with a colostomy bag.  *See id.* at 5–6.  Although Plaintiff has now been convicted and sentenced, Plaintiff's allegations primarily focus on the time period when he was detained at BCC, yet still a pre-trial detainee.  *See* Doc. 24, at 4–5 (clarifying that Plaintiff's complaint "omitted mention of his conviction status," and that he was, in fact, "a pretrial detained at the time of his allegations").

---

[1]  Plaintiff's Complaint misspelled Dr. Blumberg's name as "Dr. Bloomberg," which was incorporated into the caption of previous filings in this case.  Doc. 1.  Throughout this Ruling, however, the Court will use the correct spelling of Dr. Blumberg's name.

The Court issued an initial review order of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A, concluding that his claims for deliberate indifference to serious medical needs could proceed against Dr. Blumberg and Nurse Chamberlain-Swaby (collectively, "Defendants") in their personal capacities. *See Waters v. Bloomberg*, No. 19 Civ. 812 (CSH), 2019 WL 2343669, at *1 (D. Conn. June 3, 2019).

On the same day that Plaintiff filed his Complaint, he also filed a motion for an emergency preliminary injunction, in which he sought to "enjoin[] the defendants . . . from continuing to delay and deny [his] reverse colostomy surgery." Doc. 4, at 1. The Court denied Plaintiff's motion because he could not demonstrate the likelihood of irreparable harm: Defendants had submitted "medical records and an affidavit showing that Plaintiff ha[d] been given adequate colostomy care and that colostomy reversal surgery is merely an elective procedure, the delay of which will not cause Plaintiff to be in immediate danger." Doc. 24, at 7. The Court also concluded that Plaintiff was unable to establish that his claims would likely succeed on the merits because the evidence "at best" demonstrated that the dispute between Plaintiff and Defendants regarding his colostomy-related medical care amounted "to a mere disagreement with treatment decisions, not a showing of deliberate indifference to Plaintiff's medical needs." *Id.* at 9.

Pending now before the Court is Defendants' motion for summary judgment. Doc. 28 ("Defs.' Mot."); Doc. 28-1 ("Defs.' Mem."). Plaintiff has not submitted any opposition. This Ruling resolves Defendants' motion.

## I.   BACKGROUND

Defendants have submitted a statement of material facts. Doc. 28-2 ("Defs.' 56(a)"). As noted *supra*, Plaintiff, in contrast, has not filed any opposition papers to Defendants' motion for

summary judgment, including a Local Rule 56(a)2 statement of facts in opposition to summary judgment.[2]  Typically, this would mean that all facts in a defendant's submission would be admitted. *See* D. Conn. L. Civ. R. 56(a)(1) ("Each material fact set forth in the [movant's] Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by [a] Local Rule 56(a)2 Statement.").  However, in *Jackson v. Fed. Exp.*, 766 F.3d 189 (2d Cir. 2014), the Second Circuit explained that, "when a party, whether *pro se* or counseled, fails to respond to an opponent's motion for summary judgment, a district court may not enter a default judgment," but it "must examine the movant's statement of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment." *Id.* at 197.

In the case at bar, Plaintiff has filed a verified complaint.  Accordingly, the Court will consider the allegations therein similar to an affidavit submitted by Plaintiff in opposition to summary judgment.  *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e)."); *cf. Claude v. Wells Fargo Bank, N.A.*, No. 13 Civ. 535 (VLB), 2015 WL 5797007, at *3 (D. Conn. Sept. 30, 2015) ("Plaintiff has failed to clearly respond to the Defendant's assertions proffered in its 56(a)1 statement, and he has also failed to provide a proper

---

[2]  Defendants have certified that they served upon Plaintiff a "Notice to Self-Represented Litigant Concerning Motion for Summary Judgment," along with the relevant motion papers.  Doc. 28-3.  That notice provides, in relevant part: "The motion may be granted and your claims may be dismissed without further notice if you do not file papers as required by Rule 56 of the Federal Rules of Civil Procedure and Rule 56 of the Local Rules of Civil Procedure, and if the motion shows that the movant is entitled to judgment as a matter of law." D. Conn. L. Civ. R. 56(b) (emphasis omitted).

56(a)2 statement in connection with his summary judgment opposition.  Because Plaintiff is proceeding *pro se*, the Court will liberally construe his submissions." (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006)).

## A.    Plaintiff's Medical Treatment at BCC

Turning now to the particular facts of this case, Plaintiff is an inmate confined to the custody of the Connecticut Department of Correction ("DOC").  Defs.' 56(a) ¶ 1.  Dr. Blumberg is currently employed as a physician at DOC, and was Plaintiff's primary treating physician during Plaintiff's time at BCC.  *Id.* ¶¶ 6–9.  Nurse Chamberlain-Swaby is a registered nurse who is also employed by DOC. *Id.* ¶¶ 54–56.

Plaintiff began his current period of incarceration on February 6, 2019; and he began serving his sentence on June 5, 2019.  *Id.* ¶¶ 2–3.[3]  Plaintiff was housed at BCC from February 6, 2019 through June 28, 2019.  *Id.* ¶ 4.

When Plaintiff arrived at BCC on February 6, 2019, Plaintiff underwent an intake health screening.  *Id.* ¶ 10.  That screening indicated that Plaintiff had a prior colostomy in May 2018 and required a colostomy bag.  *Id.*  Plaintiff's colostomy was performed at Bridgeport Hospital following a gunshot wound to his abdomen.  *Id.* ¶ 11.

On February 7, 2019, Dr. Blumberg met with Plaintiff during an MD sick call.  *Id.* ¶ 12. During that visit, Dr. Blumberg and Plaintiff primarily discussed Plaintiff's neck pain related to a motor vehicle accident he had been in prior to being incarcerated in February 2019.  *Id.* ¶ 13.  Dr.

---

[3]  According to DOC's inmate information website, Plaintiff was sentenced for stealing a firearm, for which he could have received a maximum sentence of two years.  *See* CT STATE DEP'T OF CORR., *Inmate Information*, http://www.ctinmateinfo.state.ct.us (last accessed June 18, 2020). Plaintiff's maximum release date is February 5, 2021.  *See id.*

Blumberg prescribed ibuprofen and cyclobenzaprine for Plaintiff's neck pain on that day. *Id.* ¶ 14.

Dr. Blumberg also entered a medical order for Plaintiff to have access to colostomy bag supplies; and

Plaintiff was permitted to visit the infirmary for his colostomy care needs. *Id.* ¶ 15.[4]

Thereafter, Plaintiff changed his colostomy bag on February 11 and February 13, 2019. *See*

Doc. 27 ("Pl.'s Med. Records"), at 16–18.[5]

Plaintiff claims that on February 15, 2019, Plaintiff told Nurse Chamberlain-Swaby and Dr.

Blumberg that he needed to empty his colostomy bag and that he was experiencing extreme pain in

his back and stomach on a daily basis. Compl. ¶¶ 1–3. According to Plaintiff, Defendants ignored

his complaint, *id.* ¶ 4, and that Nurse Chamberlain-Swaby forced him to "stay like that"—with an

unchanged colostomy bag—even though it was full, *id.* at ¶¶ 6–7.

Defendants assert that Plaintiff changed his colostomy bag on February 15, 2019—the day

that Plaintiff claims that he complained to Nurse Chamberlain-Swaby—and then again on February

18, 2019. Defs.' 56(a) ¶ 16. Plaintiff's medical records tell a different story, however:  in fact,

---

[4]  According to Defendants, a colostomy bag change is a routine procedure and can be performed by Plaintiff himself without the assistance of a medical professional. Defs.' 56(a) ¶ 44. Whether a colostomy bag should be changed generally depends on the adherence of the bag dressing to the skin and whether the bag is leaking. *Id.* ¶ 45. Excessive bag changes may irritate the skin and a bag may not need to be changed for multiple days or longer, depending on the circumstances. *Id.* ¶ 46. Under some medical circumstances, individuals may be required to live with colostomies their entire lives. *Id.* ¶ 47. Reversal surgery is generally an elective procedure, and advisable only where medically indicated. *Id.* ¶ 48. That is because, according to Defendants, as with any surgery, a colostomy reversal procedure presents its own risks to a patient's health and well-being. *Id.* ¶ 51. According to Defendants, further, a colostomy does not pose any significant risk to an individual's life or medical well-being. *Id.* ¶ 49. It is also not generally associated with excessive or chronic pain. *Id.* ¶ 50.

[5]  Defendants claim that Plaintiff changed his colostomy bag on February 15, 2019, not February 13, 2019. Defs.' 56(a) ¶ 16. Plaintiff's medical records reveal, however, that he changed his colostomy bag on the latter date. Pl.'s Med. Records at 17–18.

Plaintiff's colostomy bag was changed on February 13, 2019; and then it was not changed again until February 28, 2019. Pl.'s Med. Records at 17–18, 24–25.[6]

Meanwhile, Plaintiff claims that he was experiencing extreme pain in his stomach in February 2019. Compl. ¶¶ 1–3. However, his medical records from those dates do not indicate that Plaintiff was in any pain related to his colostomy. Defs.' 56(a) ¶ 16; *see also* Pl.'s Med. Records at 18, 25.

According to Plaintiff, Nurse Chamberlain-Swaby similarly refused to change Plaintiff's colostomy bag in March and April 2019, even though it was full. Compl. ¶¶ 7–8.

Defendants' submissions reveal that Plaintiff's colostomy bag was replaced on a number of occasions during those months. For example, although Plaintiff did not require a colostomy bag change on March 2, 2019, Plaintiff changed his colostomy bag without complaint of pain the following day. Defs.' 56(a) ¶¶ 17–18.[7] Plaintiff changed his colostomy bag again on March 7, March 12, and March 18, 2019, again without any note of pain. Defs.' 56(a) ¶ 19.

On March 16, 2019, Plaintiff visited the St. Vincent's Medical Center ("St. Vincent's") Emergency Room ("ER") complaining of severe abdominal pain. *Id.* ¶ 20; *see also* Compl. ¶¶ 4–5 ("In March 2019, the pain became unbearable. Plaintiff was sent to an outside hospital call St. Vincent's due to Defendants failing to treat Plaintiff's serious medical condition."). According to

---

[6] The Court is permitted to deviate from Defendants' statement of material facts because it is contradicted by the evidence in the record. *See Vega v. Rell*, 611 F. App'x 22, 25–26 (2d Cir. 2015) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

[7] Plaintiff's medical records to not reveal why Plaintiff did not require a colostomy bag change on March 2, 2019. Pl.'s Med. Records at 26. Neither Dr. Blumberg nor Nurse Chamberlain-Swaby inputted the notation on that day; a different registered nurse, who is not mentioned in any of Plaintiff's submissions, was on duty. *See id.*

Defendants, Plaintiff's blood work taken during his emergency room visit revealed abnormal liver function tests but there was no indication in the medical records that the test results bore any connection to Plaintiff's colostomy or that the original abdominal pain related to Plaintiff's colostomy. Defs.' 56(a) ¶ 21.  Plaintiff's medical records from the ER visit stated that Plaintiff was scheduled to have a reverse surgery in February but it was postponed because of his arrest.  Pl.'s Med. Records at 92.

On March 20, 2019, Dr. Blumberg met with Plaintiff during a MD sick call to discuss his ER visit.  Defs.' 56(a) ¶ 22.  During this appointment, Plaintiff noted that his abdominal pain was better. *Id.* ¶ 23.  Plaintiff received an order for Motrin for pain that was related to the March 2019 ER visit, and Plaintiff did not raise with Dr. Blumberg any issue related to pain or his current pain medication. *Id.* ¶ 24.  Following the March 20 MD sick call, Dr. Blumberg ordered Hepatitis blood work and a blood test for a fish allergy.  *Id.* ¶ 25.

Notably, during the March 20 visit, Plaintiff also indicated to Dr. Blumberg that he had a follow-up appointment with an unknown provider related to a colostomy reversal surgery.  *Id.* ¶ 26. Dr. Blumberg advised Plaintiff to provide the name and contact information for said provider to her during this March 20 visit. *Id.* ¶ 27.  Plaintiff never provided Dr. Blumberg this requested information regarding the outside medical provider.  *Id.* ¶ 28.[8]

Dr. Blumberg reviewed Plaintiff's health records from Bridgeport Hospital and St. Vincent's that were available to her as part of DOC's medical records; but she was unable to locate any note

---

[8]  According to Plaintiff, the March 20 visit is not the first time he discussed the colostomy reversal with Dr. Blumberg.  Plaintiff also claims that at some point in February 2019, Plaintiff explained to Dr. Blumberg that he was scheduled to receive a reverse colostomy surgery that month. Compl. ¶ 9.

of a scheduled reverse colostomy surgery.  *Id.* ¶ 29.  According to Defendants, without any information to corroborate Plaintiff's claim that he was due for surgery, Dr. Blumberg had no information available to her to suggest that such reversal was medically indicated.  *Id.* ¶ 30.  For his part, Plaintiff claims that Dr. Blumberg refused to put Plaintiff in for surgery even though she "confirmed" that he was supposed to undergo surgery earlier in the year.  Compl. ¶ 10.  According to Plaintiff, "these violations are ongoing."  *Id.* at 11.

Meanwhile, after Plaintiff's March 20 MD sick call visit with Dr. Blumberg, Plaintiff changed his colostomy bag on March 22, 2019; failed to show at the medical unit for treatment on March 23; and changed his colostomy bag again on March 26, all with no note of pain in connection with the colostomy bag.  Defs.' 56(a) ¶ 31.  On March 27, 2019, Plaintiff reported, on the other hand, that he had very severe pain unrelated to his colostomy bag—that is, he had dental pain related to swollen gums.  Pl.'s Med. Records at 53.

On April 1, 2019, Dr. Blumberg met with Plaintiff for the third time during an MD sick call to discuss the results of his Hepatitis and allergy blood work.  Defs.' 56(a) ¶ 32.  During the visit, Dr. Blumberg and Plaintiff did not discuss Plaintiff's colostomy or any pain that he was experiencing related to his colostomy.  *Id.* ¶ 33.  Plaintiff changed his colostomy bag on April 1, April 10, and April 13, 2019, without complaint; and he failed to show up for a medical appointment on April 8, 2019 for treatment.  *Id.* ¶ 34.  On April 21, 2019, Plaintiff informed prison medical staff that he did not require a colostomy bag change but that he would notify an officer if his status changed.  *Id.* ¶ 35.  Plaintiff thereafter changed his bag on April 22, April 23, and April 28, 2019, all with no note of pain or issue.  *Id.* ¶ 36.  Plaintiff later changed his colostomy bag on May 1, May 4, May 23, and May 26, 2019, again with no indication of pain or issue.  *Id.* ¶ 37.

8

On June 5, 2019, Plaintiff insisted that he be permitted to change his colostomy bag in a different bathroom than the infirmary bathroom and was informed that all colostomy bag changes must be made in the infirmary bathroom. *Id*. ¶ 38. Plaintiff thereafter refused to go to the proper bathroom to conduct his bag change and voluntarily returned to his unit without changing his bag that day. *Id*. ¶ 39.

On July 22, 2019, Plaintiff met with Dr. Norman Nicholson and Dr. Shea Gregg of Bridgeport Hospital for a general surgery consultation regarding his colostomy and potential reverse colostomy surgery. *Id*. ¶ 40. Plaintiff was advised by the Bridgeport Hospital physicians that it would be better for him to discharge from DOC custody before obtaining the reversal surgery. *Id*. ¶ 41. Plaintiff was also advised that the longer the repair was delayed, the easier the repair would be. *Id*. Plaintiff was informed that he should have a follow up after release from custody. Pl.'s Med. Records at 88.

According to Defendants, Dr. Blumberg has never been involved in Plaintiff's colostomy bag changes; and, Plaintiff has never requested that Dr. Blumberg assist him with changing his colostomy bag. Defs.' 56(a) ¶ 42. Plaintiff's access to colostomy supplies and assistance with bag changes, where necessary, would be provided by BCC nursing staff. *Id*. ¶ 43.

**B.    Medical Unit Front Desk Incident**

Although Plaintiff claims that Nurse Chamberlain-Swaby did not permit Plaintiff to change his colostomy bag regularly throughout February, March, and April 2019, Nurse Chamberlain-Swaby, for her part, claims that she interacted with Plaintiff in her professional capacity as a registered nurse on only one occasion during his time at BCC, in March or April 2019. *Id*. ¶¶ 57–58. On that date, Nurse Chamberlain-Swaby was assigned to BCC's medical unit front desk, during the second shift from 4:00 p.m. to midnight. *Id*. ¶ 59.

9

During this shift, according to Defendants, Plaintiff approached the front desk and requested supplies to change his colostomy bag. *Id*. ¶ 60.  Nurse Chamberlain-Swaby prepared the colostomy supplies for Plaintiff and provided them to him. *Id*. ¶ 61.  Plaintiff was generally able to change his colostomy bag on his own and did not request assistance with changing the colostomy bag on the date in question. *Id*. ¶ 62.  Plaintiff accepted the supplies and requested to change his colostomy bag in the front medical unit bathroom. *Id*. ¶ 63.  At that time, DOC medical unit policy dictated that the front medical unit bathroom was for staff use only; inmates were only permitted to use the rear infirmary bathroom. *Id*. ¶ 64.  In response to Plaintiff's request to use the front medical unit bathroom, Nurse Chamberlain-Swaby responded that, per unit policy, Plaintiff would have to use the rear infirmary bathroom. *Id*. ¶ 65.  Plaintiff thereafter became upset and indicated that he no longer wanted to change his colostomy bag. *Id*. ¶ 66.  Plaintiff returned the supplies to Nurse Chamberlain-Swaby and left the unit. *Id*. ¶ 67.  Plaintiff never discussed any issue with pain or his pain medication with Nurse Chamberlain-Swaby during their single interaction. *Id*. ¶ 68. (Plaintiff does not reference this incident in his submissions.)

## C.   Plaintiff's Medical Treatment Administrative Appeal

At BCC, Plaintiff only filed one Health Services Review (HSR) request pursuant to DOC Administrative Directive 8.9 ("Directive 8.9"). *Id*. ¶ 69.  That directive establishes a procedure at DOC for an "administrative remedy for all health services to enable an inmate to seek formal review of any health care provision, practice, diagnosis or treatment." Defs.' Mot. exh. B at 4.  Plaintiff dated this request on March 29, 2019; and it was received by BCC medical on April 5, 2019 ("Plaintiff's HSR request").  Defs.' 56(a) ¶¶ 70–71.  Plaintiff's HSR request was logged as a Diagnosis and Treatment request and stated:

> On or about 3/1/19 . . . this writer informed medical to change his colostomy bag, as it is prone to serious infections and, upon being notified, medical stated "wait till it's infected."  Nurse Tanisha Carrington, along with an African American woman . . . stated to stop worrying, yet the aforementioned bag leaked and is prone to sepsis. . . . [T]his writer, utilizing a CN 6901 inmate request form wrote the nursing supervisor approximately 3 weeks ago and never received a response which is why a CN 6901 inmate request form cannot be attached.  This writer respectfully requests this medical department change the aforementioned colostomy bag, along with treating this writer with respect and dignity and do not degrade this writer for contacting medical to adhere to their job.  This writer[] respectfully requests, *inter alia*[,] to have his bag changed whenever.  He wants . . . to get his pain medication as needed.

Defs.' Mot. exh. B at 4.  Plaintiff's HSR request, as Defendants note, did not name Nurse Chamberlain-Swaby nor Dr. Blumberg.  Defs.' 56(a) ¶ 74.  It also did not claim that either Nurse Chamberlain-Swaby or Dr. Blumberg ignored any complaints of pain that Plaintiff was having; nor did it reference any reverse colostomy surgery.  *Id*. ¶ 75.  It did not reference any date other than March 1, 2019.  *Id*. ¶ 76.

On the same date that BCC medical received Plaintiff's HSR request, Plaintiff spoke with the Correctional Head Nursing Supervisor (CHNS) and withdrew it.  *Id*. ¶ 77.  Thereafter, Plaintiff's HSR request was documented as "withdrawn," and returned to Plaintiff with a note indicating that the request had been withdrawn at his request.  *Id*. ¶ 78.  Further, because Plaintiff withdrew his request, there was no formal resolution provided pursuant to Directive 8.9.  *Id*. ¶ 79.  During Plaintiff's time at BCC—that is, from February 6 through June 28, 2019—Plaintiff did not file any HSR requests that culminated in any formal resolution pursuant to the directive.  *Id*. ¶ 80.

## II.  STANDARD OF REVIEW

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ.

P. 56(a); *see also Redd v. New York Div. of Parole*, 678 F.3d 166, 173–74 (2d Cir. 2012).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law." *Id.*

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  If the initial burden is satisfied, the burden then shifts to the nonmoving party to present "specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks and citation omitted).  While the Court must view the record in the light most favorable to the nonmoving party, and resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, *see Anderson*, 477 U.S. at 255, the nonmoving party nevertheless "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the nonmovant must support each assertion disputing the veracity of a fact or existence of an alleged dispute with specific citation to the evidentiary record. *See* Fed. R. Civ. P. 56(c)(1).

Because Plaintiff is proceeding *pro se*, the Court must read their submissions "liberally" and interpret them "to raise the strongest arguments" that they suggest.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).  Nonetheless, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation marks omitted).

## III.   **DISCUSSION**

The gravamen of Plaintiff's Complaint is that Defendants were and continue to be deliberately indifferent to Plaintiff's serious medical needs.  First, Plaintiff seeks compensatory and punitive damages, and alleges that Defendants have exacerbated his condition as a prisoner with a colostomy bag.  For example, Plaintiff claims that Nurse Chamberlain-Swaby repeatedly failed to change his colostomy bag, and that Plaintiff experienced, and continues to experience, pain as a result of Dr. Blumberg's failure to approve a reverse colostomy surgery.  Secondly, Plaintiff appears to be seeking injunctive relief in the form of a court order directing Dr. Blumberg to approve his reversal surgery.[9]

Defendants make two overarching arguments in support of their motion for summary judgment: (1) that Plaintiff failed to exhaust DOC's administrative remedies in connection with his claims, which bars this lawsuit pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e (the "PLRA"); and (2) that Plaintiff's claims of deliberate indifference fail as a matter of law.

Because "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court," the Court will first address Defendants' arguments regarding exhaustion and then turn to the merits of Plaintiff's claim, if necessary. *Jones v. Bock*, 549 U.S. 199, 211 (2007).

### A.   **Rule of Exhaustion**

The PLRA provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

---

[9]  The Court construes Plaintiff's submissions as seeking injunctive relief based on the fact that he asserted in his Complaint that Dr. Blumberg "is delaying and denying the plaintiff's corrective surgery," and that he filed his motion for a preliminary injunction on the same day that he filed his Complaint.  Compl. ¶ 11.  Additionally, as noted *supra*, the Court must construe Plaintiff's submissions liberally.

prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Congress enacted section 1997(e) to "reduce the quantity and improve the quality of prisoner suits" by, for example, affording "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002).

An "untimely or otherwise procedurally defective administrative grievance or appeal" does not constitute the "proper exhaustion of administrative remedies" that is necessary under the PLRA. *Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006).  Further, because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion," the exhaustion inquiry requires that courts review the relevant state procedure and the prisoner's grievance to determine whether the prisoner has complied with those procedures. *Jones*, 549 U.S. at 218.

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own textual exception to mandatory exhaustion." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).  That is, the statute provides that only those administrative remedies that "are available must first be exhausted." 42 U.S.C. § 1997e(a).  The exhaustion requirement, in other words, "hinges on the availability of administrative remedies: [a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1858 (internal quotation marks and alteration omitted); *Williams v. Correction Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (recognizing that *Ross* "fram[es] the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate").

Under the PLRA, grievance procedures are "available" if they are "capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1858 (citing *Booth v. Churner*, 532

U.S. 731, 738 (2001)). Ultimately, it is the province of the court to determine whether such circumstances exist in a given case. *See Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) ("Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements.").

Defendants bear the initial burden of proving that the administrative remedies available to Plaintiff were not exhausted prior to the initiation of this civil action. *See Jones*, 549 U.S. at 216. Plaintiff must then establish that the grievance procedures were unavailable to him. *See id.*

## B.   Exhaustion Under DOC Administrative Directive 8.9

In this case, it is undisputed that Plaintiff was required to comply with the grievance procedures set forth in Directive 8.9. It states that there are two types of Health Services Review ("HSR"): (1) a Diagnosis and Treatment review, which is "[a] review of a diagnosis or treatment including a decision to provide no treatment, relating to an individual inmate"; and (2) a Review of an Administrative Issue, which is "[a] review of a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider." Directive 8.9 ¶ 9(A)–(B).

Prior to applying for either form of Health Services Review, the directive requires that an inmate seek informal resolution, either face to face with the appropriate staff member or with a supervisor via written request utilizing DOC's CN 9601 Inmate Request Form. *Id.* ¶ 10. The DOC official must respond to the inmate's written request within fifteen calendar days of receipt of the request. *Id.* If the informal resolution is unsuccessful, an inmate may apply for a Health Services Review, using a CN 9602 Inmate Administrative Remedy form. *Id.* ¶¶ 11, 12.

If an inmate is seeking the first type of Health Services Review—a Diagnosis and Treatment review—the Health Services Review Coordinator ("HSR Coordinator") must schedule a Health

Services Review appointment with the appropriate medical professional, to determine what action, if any, should be taken. *Id.* ¶ 11(A). If, after the appointment, the medical professional determines that the existing diagnosis or treatment is appropriate, the inmate is deemed to have exhausted his or her HSR remedy. *See id.* If the provider reaches a different conclusion with respect to the inmate's appropriate diagnosis or course of treatment, he or she may either provide the appropriate diagnosis or treatment or refer the case to the Utilization Review Committee for authorization indicating the need for different treatment. *See id.* ¶ 11(B).

Directive 8.9 prescribes separate procedures when an inmate pursues the second type of HSR—a Review of an Administrative Issue. Under those circumstances, the HSR Coordinator must evaluate, investigate, and decide the matter within thirty days; and the outcome must be noted by a disposition of rejected, denied, compromised, upheld, or withdrawn. *Id.* ¶ 12(A). If the inmate is not satisfied with the response, he or she may appeal within ten business days by completing a CN 8901 form. *Id.* ¶ 12(B). The appropriate contracted health services provider must decide the appeal within fifteen business days of receiving the appeal. *Id.* ¶ 12(C). If the inmate's issue relates to "compliance with existing standards," the review is final, and the HSR process is exhausted. *Id.* If the inmate's issue relates to "DOC health services policy," the inmate may appeal to the DOC Director of Health Services within ten business days of receiving the decision from the health services provider or designated facility health services director. *Id.* ¶ 12(D). Within thirty business days of receipt of such appeal, the director must notify the inmate of the decision. *Id.* And, upon receipt of that decision, the inmate will have exhausted the Health Services Review for administrative issues. *Id.* ¶ 12(E).[10]

---

[10] Directive 8.9 became effective on July 24, 2012. There does not appear to be any dispute that the policy was in effect at the time of the allegations in Plaintiff's Complaint.

**C.    Plaintiff's Efforts to Exhaust**

As noted *supra*, Defendants assert that they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies in connection with his allegations of deliberate indifference.    Defendants make two principal arguments in support of their claim regarding exhaustion.  First, Defendants maintain that Plaintiff only filed one HSR request in connection with his colostomy-related complaints at BCC, and that he withdrew that request, which precluded any formal resolution of Plaintiff's complaint.  Defs.' Mem. at 13.  Secondly, Defendants contend that Plaintiff's HSR request, even if Plaintiff had not withdrawn it, provided insufficient notice to DOC regarding the nature of Plaintiff's claims.  *Id.* at 13–14.  For the reasons discussed below, the Court agrees with Defendants that Plaintiff failed to exhaust his administrative remedies.

I will recount again a number of facts that are relevant to this claim.  As discussed *supra*, Plaintiff filed one HSR request which was received on April 5, 2019.  Defs.' 56(a) ¶¶ 69–71. Plaintiff's HSR request explained that on March 1, 2019, Plaintiff requested from BCC's medical unit a change of his colostomy bag, but the medical unit responded, "wait till it's infected." Defs.' Mot. exh. B at 4.  Sometime thereafter, two nurses (one who is not named in Plaintiff's Complaint, and the other who was neither named in Plaintiff's Complaint nor named in Plaintiff's HSR request itself), told Plaintiff to stop worrying.  *See id.*  According to Plaintiff's HSR request, Plaintiff's bag then leaked.  *See id.*  Plaintiff's HSR request continued, explaining that shortly after the bag leak, Plaintiff used a CN 6901 inmate request form to write to the nursing supervisor, presumably about the incident.  *See id.*  Plaintiff never received a response, though.  *See id.*  Plaintiff in his HSR request also asked that the medical department "change [his] colostomy bag," "have his bag changed whenever," and "to get his pain medication as needed."  *Id.*  On the same date that BCC medical

17

received Plaintiff's HSR request, Plaintiff spoke with the correctional head nursing supervisor, and withdrew the request. Defs.' 56(a) ¶ 77. A notation was then made on the HSR request marking it "withdrawn," and it was returned to Plaintiff with a note indicating that the request had been withdrawn per his request. *Id*. ¶ 78. No formal resolution ever took place in connection with Plaintiff's HSR request. *Id*. ¶ 79. During Plaintiff's time at BCC—that is, from February 6 through June 28, 2019—Plaintiff did not file any HSR requests that culminated in any formal resolution pursuant to Directive 8.9. *Id*. ¶ 80.

The Court will now turn back to Defendants' arguments in support of their motion for summary judgment. According to Defendants, because Plaintiff "voluntarily withdrew his HSR request, the formal resolution process set forth in Directive 8.9 was not completed." Defs.' Mem. at 13. Further, because the formal resolution process was never completed, Plaintiff therefore "did not exhaust his administrative remedies." *Id*. The Court agrees.

The Supreme Court has previously discussed the essential purposes of exhaustion requirements:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).

*Woodford*, 548 U.S. at 90 (citation and internal quotation marks omitted).

This Court has applied those principles in lawsuits that are analogous to the case at bar. In *Braham v. Armstrong*, No. 00 Civ. 261 (AVC) (TPS), 2003 WL 25319421 (D. Conn. Apr. 24,

2003), for example, the Court granted summary judgment in favor of a number of DOC-affiliated defendants on the basis of the plaintiff's failure to exhaust administrative remedies. *See id.* at *3. In that case, the plaintiff claimed that the defendants were deliberately indifferent to his right to be secure from harm from other inmates, and on a number of occasions he filed inmate request forms seeking a change in cellmates. *See id.* at *1. But the plaintiff never filed a formal grievance—that is, the next step in the review process, per the administrative directive that was at issue in the case. *See id.* Even though the plaintiff undertook a number of *first* steps to pursue administrative remedies available to him, this was not enough. *See id.* at *3. Rather, according to the Court: "[t]o fully exhaust, the plaintiff must go beyond the first step, seeking further stages of administrative review until the plaintiff has availed himself of the final stages of the administrative process." *Id.*

More recently, this Court concluded in another analogous case that the plaintiff failed to exhaust his administrative remedies. *See Peeler v. McGill*, No. 11 Civ. 327 (RNC), 2013 WL 5913827 (D. Conn. Oct. 31, 2013), *aff'd*, 582 F. App'x 21 (2d Cir. 2014). In *Peeler*, the plaintiff alleged that various DOC officials were deliberately indifferent to a threat to his safety. *See id.* at *1. The plaintiff in that case had filed an administrative grievance, but it was determined to be deficient because it was "vague in the action requested." *Id.* at *4. Rather than submitting a second grievance, however, the plaintiff chose to file a lawsuit. *Id.* That decision was critical to the Court's grant of summary judgment to the defendants: "[a]s a result of plaintiff's decision to forego filing a second grievance, the merits of his grievance based on the assault have not been addressed administratively. Thus . . . the record establishes that the plaintiff failed to exhaust available administrative remedies before filing this suit." *Id.*

19

*Braham* and *Peller* did not address the effect of an inmate's withdrawal of his or her own grievance, but the principles from those cases provide guidance here. Like *Braham*, the Plaintiff in the case at bar took only a "first step" in availing himself of DOC's administrative remedies: he filed an HSR request regarding Defendants' medical treatment. *Braham*, 2003 WL 25319421, at *3. But Plaintiff then short-circuited the HSR process by withdrawing his complaint. As a result, Plaintiff did not follow through to the final stages of the review process which is required for Plaintiff to exhaust all administrative remedies available under Directive 8.9.

The instant lawsuit is also similar to *Peeler*, where the plaintiff failed to refile a grievance after his first was deficient. In the case at bar, after Plaintiff withdrew his HSR request, he did not file another request even though he now claims that his medical problems—and Defendants' alleged inadequate treatment of his medical problems—persisted. Rather, Plaintiff disregarded DOC's health review process in favor of filing the instant lawsuit. Accordingly, Plaintiff has not used "all steps" that DOC held out to Plaintiff, nor did he do so properly to permit DOC to address his concerns on the merits. *Woodford*, 548 U.S. at 90.

The case at bar is also markedly different from *Michalski v. Corr. Managed Health Care*, No. 15 Civ. 571 (VAB), 2016 WL 6208250 (D. Conn. Oct. 21, 2016), a lawsuit in which this Court *did* address an inmate's purported withdrawal of his grievance. In that case, the defendants claimed that they were entitled to summary judgment based on the plaintiff's alleged failure to exhaust his administrative remedies. *See id.* The defendants also submitted a copy of an inmate's grievance form on which a reviewer made a notation that the grievance had been withdrawn. *See id.* The note read: "[i]nmate reports he is satisfied with current plan of care for wrist, and will follow up as needed when outside records have been reviewed. Inmate states this HSR request is withdrawn." *Id.* The

defendants also submitted the plaintiff's clinical record, on which there was a handwritten note indicating that the plaintiff withdrew his request and stated that he was satisfied with his current plan of care. *See id.* However, the plaintiff disputed that evidence, claiming that he had not actually withdrawn his grievance. *See id.* For example, the plaintiff filed an affidavit stating that he never withdrew his request; and he also claimed that the notations on his grievance form and clinical records were false. *See id.* On the basis of that factual dispute, the Court concluded that summary judgment was inappropriate:

> A genuine dispute exists as to whether [the plaintiff] actually told [the] defendant . . . or another correctional staff member that he wanted to withdraw his complaint. [The plaintiff] presents an affidavit that, taken as true, calls into question the credibility of the notations on his CN 9602 and Clinical Record. The Court cannot resolve credibility issues on a motion for summary judgment.

*Id.*

In the case at bar, Plaintiff does not argue that the notation on his HSR request that it had been "[w]ithdrawn per inmate request" was false. Defs.' Mem. exh. B at 4. Nor, in contrast to *Michalski*, does Plaintiff put forth any other evidence that indicates a factual dispute regarding the withdrawal; or, for that matter, as Defendants point out, any evidence indicating proper exhaustion. *See Jordan v. LaFrance*, No. 18 Civ. 1541 (MPS), 2019 WL 5064692, at *3 (D. Conn. Oct. 9, 2019) ("The plaintiff would have to present some evidence, either physical evidence or specific factual statements in his affidavit, showing that he exhausted his administrative remedies. As he has not done so, the defendant's motion for summary judgment is granted."). Accordingly, even construing the evidence in a light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the Court concludes that it is undisputed that Plaintiff withdrew his HSR request. Because Plaintiff

withdrew his only request, and did not file another, he failed to exhaust his administrative remedies under DOC policy.

Lastly, there is no indication that DOC's Health Services Review procedures were "unavailable" to Plaintiff. *See Ross*, 136 S. Ct. at 1858. The Supreme Court has explained that an administrative procedure is "unavailable" if: (1) "it operates as a simple dead end"; (2) if it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60. Even construing the evidence in a light most favorable to Plaintiff, and construing his submissions liberally, Plaintiff's filings do not intimate—nor is there any evidence elsewhere in the record that suggests—that any of these circumstances were present in the case at bar. Rather, the fact that Plaintiff filed an HSR request provides support for the notion that DOC's administrative remedies were available to Plaintiff. *See, e.g.*, *Simmons v. Sheckler*, No. 16 Civ. 1224 (JCH), 2018 WL 3596748, at *4 (D. Conn. July 26, 2018) ("[T]he fact that [the plaintiff] filed two grievances relating to other aspects of the inmate assault speaks to the availability of the grievance procedure."). Therefore, Plaintiff is not otherwise excused from the PLRA's exhaustion requirements. *See, e.g.*, *Braham v. Perelmuter*, No. 15 Civ. 1094 (JCH), 2017 WL 3222532, at *11 (D. Conn. July 28, 2017) ("Because [the plaintiff] has not demonstrated that the grievance process was unavailable to him with regard to [his claim] he is not excused from the PLRA's administrative exhaustion requirement.").

**D.    Content of Plaintiff's HSR Request**

The Court now turns to Defendants' second argument in support of their claim that Plaintiff

failed to exhaust his administrative remedies: that Plaintiff's HSR request, even if it had not been

withdrawn, failed to place Defendants on notice regarding his issues with his medical care.

The Supreme Court has instructed courts to undertake a claim-by-claim analysis when

analyzing whether a plaintiff has exhausted the administrative remedies available to him or her.  *See*

*Jones*, 549 U.S. at 224 (discussing the PLRA's exhaustion requirement and noting, "there is no clear

reason to depart from the more typical claim-by-claim approach").  That is mainly for reasons of

judicial economy and efficiency: a court may allow exhausted claims to proceed in a lawsuit, rather

than dismissing them outright, even when a complaint also contains unexhausted claims.  *See id.* at

223 ("[T]he effect of a total exhaustion rule could be that inmates will file various claims in separate

suits, to avoid the possibility of an unexhausted claim tainting the others.  That would certainly not

comport with the purpose of the PLRA to reduce the quantity of inmate suits.").

Additionally, the Second Circuit has compared the PLRA exhaustion requirement to "the rules

of notice pleading," such that an inmate's grievance "must contain allegations sufficient to alert the

defendants to the nature of the claim and to allow them to defend against it."  *Johnson v. Testman*,

380 F.3d 691, 697 (2d Cir. 2004) (citation and internal quotation marks omitted).

With those principles in mind, this Court has granted summary judgment for defendants on

the basis that plaintiffs have not exhausted administrative remedies, where the plaintiffs have failed

in their prison grievances to provide the defendants with sufficient notice of the nature of their claims.

*See, e.g.*, *Urbanski v. Dep't of Correction*, No. 18 Civ. 1323 (VLB), 2019 WL 6683047, at *4–10

(D. Conn. Dec. 5, 2019) (granting defendants' motion for summary judgment, in part, because the

conditions complained of in the plaintiff's grievances were not "logically related" to the allegations at issue in the lawsuit and therefore provided insufficient notice to the defendants: none of the plaintiff's health service reviews or inmate requests discussed a DOC physician's discontinuation of any care in response to injuries that were traceable to a particular van accident; the grievances only contended that the physician was not treating back pain caused by a pre-existing condition); *Simmons*, 2018 WL 3596748, at *3 (granting the defendant's motion for summary judgment, in part, because the two grievances that the plaintiff *had* filed could not provide the plaintiff with a basis for exhaustion because "neither of the[] two grievances concerned [the plaintiff's] . . . claims against [the defendant]"); *Chambers v. Johnpierre*, No. 14 Civ. 1802 (VAB), 2016 WL 5745083, at *7 (D. Conn. Sept. 30, 2016) (granting the defendants' motion for summary judgment on the ground that the plaintiff failed to properly and fully exhaust his available administrative remedies because the plaintiff had not "provided sufficient evidence to suggest that he filed initial grievances about the claims at issue in this complaint").

Turning to the case at bar, the issue is whether Plaintiff's HSR request would have placed Dr. Blumberg and Nurse Chamberlain-Swaby on notice of Plaintiff's claims for deliberate indifference.

There exists no genuine issue of material fact whether Plaintiff exhausted his administrative remedies with respect to his claim against Dr. Blumberg regarding obtaining reverse colostomy surgery. Plaintiff's HSR request does not contain any mention of Dr. Blumberg. *See* Defs.' Mot. exh. B at 4. Nor does it contain any reference to any kind of surgery. *See id.* Accordingly, it is clear that Plaintiff's HSR request did not provide Dr. Blumberg with adequate notice of Plaintiff's claim.

Whether Plaintiff's HSR request would have placed Nurse Chamberlain-Swaby on notice is a closer call, though it still would not be sufficient. Plaintiff's HSR request focuses almost exclusively

on an incident from early March 2019, rather than an ongoing pattern beginning in February and ending in April 2019, as Plaintiff now contends. More problematic, Plaintiff's HSR request does not name Nurse Chamberlain-Swaby directly—it names two individuals: one nurse who is not named in this lawsuit, and one unnamed nurse. *See, e.g.*, *Saidock v. Carrington-McClain*, No. 19 Civ. 1319 (KAD), 2020 WL 2523286, at *6 (D. Conn. May 18, 2020) (granting a motion to dismiss with respect to a plaintiff's claim against a DOC nurse because the plaintiff's HSR request only referred to a doctor's failure to provide the plaintiff with a low residue diet; it did not also refer to the *nurse's* denial of the low residue diet). To be sure, Plaintiff asks to "have his bag changed whenever" and "to get his pain medication as needed." Defs.' Mot. exh. B at 4. Construing evidence in Plaintiff's favor, the Court might interpret these statements to mean that Plaintiff's colostomy bags were not changed whenever he requested replacements, or that he was in a significant amount of pain. However, the key inquiry is whether the request sufficiently alerted "*the defendants* to the nature of the claim and to allow them to defend against it." *Johnson*, 380 F.3d at 697 (emphasis added). The Court concludes that Plaintiff's vague statements would not.

The Court sympathizes with the Plaintiff. Plaintiff's submissions assert that he has experienced pain and humiliation as a result of his colostomy bag. *See* Compl. ¶ 11 ("It is humiliating having this colostomy bag[,] it was supposed to be temporary."). There is evidence that DOC officials did not provide Plaintiff with dignity in connection with his medical treatment. *See* Defs.' Mot. exh. B at 4 (requesting in his HSR request that the medical department treat Plaintiff "with respect and dignity and do not degrade [Plaintiff] for contacting medical to adhere to their job"). If DOC officials, in fact, failed to provide Plaintiff with respect and dignity because of his medical

condition, that would offend common sensibilities about how health care workers ought to treat patients.

Additionally, the Court sees some evidence that supports the merits of Plaintiff's claim that DOC failed to change Plaintiff's colostomy bag in a timely manner.  Although Defendants claim that Plaintiff's colostomy bag was changed "on numerous occasions in the BCC medical unit," Defs.' Mem. at 5, there were also times where it was not changed for days or weeks on end, *see, e.g.*, Pl.'s Med. Records at 17–18, 24–25 (noting that Plaintiff's colostomy bag was changed on February 13, 2019, and then only again over two weeks later, on February 28, 2019).

In ruling on this motion, however, the Court is bound by the PLRA's exhaustion requirements, which mandate a grant of summary judgment for Defendants.

For the forgoing reasons, I conclude that Plaintiff has failed to exhaust his administrative remedies.  Accordingly, the Court GRANTS Defendants' motion for summary judgment and Plaintiff's Complaint is DISMISSED.  The second part of Defendants' motion for summary judgment, which is addressed to the merits of Plaintiff's deliberate indifference claim, is therefore not reached. *See, e.g.*, *Vidro v. Erfe*, No. 18 Civ. 567 (CSH), 2019 WL 4738896, at *9 (D. Conn. Sept. 26, 2019) (the merits of the plaintiff's claim were "not reached" because the court had already granted summary judgment for the defendants on the basis of the plaintiff's failure to exhaust the administrative remedies available to him); *Braham*, 2017 WL 3222532, at *11 n.12 ("Because the court has granted the Motion for Summary Judgment on the ground that [the plaintiff] did not exhaust his remedies . . . prior to filing the Second Amended Complaint, the court need not reach defendants' other arguments for summary judgment.").

26

**E.    Dismissal with Prejudice**

The granting of summary judgment to Defendants results in the dismissal of Plaintiff's Complaint.  The Court must consider whether that dismissal should be with or without prejudice.

Dismissal without prejudice on a failure to exhaust administrative remedies grant of summary judgment is appropriate where "a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit."  *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004).  On the other hand, dismissal with prejudice is appropriate "where a plaintiff is effectively barred from administrative exhaustion."  *McCoy v. Goord*, 255 F. Supp. 2d 233, 252 (S.D.N.Y. 2003).  Thus, in *Vidro*, 2019 WL 4738896, for example, I dismissed a plaintiff's complaint with prejudice because his failure to exhaust was incurable: he did not submit the requisite inmate request form in a timely manner pursuant to Administrative Directive 9.6, and any attempt to do so at that time would have been time-barred.  *See id.* at *9–10.

In contrast, Directive 8.9—which, as the Court discussed throughout this Ruling, governs the administrative remedies available to Plaintiff for the alleged issues that precipitated the case at bar—does not contain a statute of limitations for the initial filing of a Review of a Diagnosis or Treatment.  *See Carter v. Revine*, No. 14 Civ. 1553 (VLB), 2017 WL 2111594, at *15 (D. Conn. May 15, 2017) (noting the "stark contrast" between Directive 9.6, which imposes a thirty-day statute of limitations on the grievance process, and Directive 8.9, which "contains no statute of limitations for the initial filing of a Review of an Administrative Issue").

Therefore, Plaintiff is not precluded from initiating the Health Review Process again at this time: should he choose to, Plaintiff can cure the defects identified in this Ruling by exhausting the administrative remedies available to him in accordance with DOC procedures, and reinstitute his

lawsuit.  *See Berry*, 366 F.3d at 87 ("If the time permitted for pursuing administrative remedies has

not expired, a prisoner who brings suit without having exhausted these remedies can cure the defect

simply by exhausting them and then reinstituting his suit. . . .  In such circumstances, we have

recognized that dismissal without prejudice is appropriate." (citation and internal quotation marks

omitted)).  For those reasons, the Court dismisses Plaintiff's claims without prejudice to refiling.

## IV.    CONCLUSION AND ORDERS

Based on the foregoing, Defendants' motion for summary judgment is GRANTED.  Plaintiff's

claims are DISMISSED WITHOUT PREJUDICE.  The Clerk is directed to enter judgment in favor

of Defendants and close this case.

It is SO ORDERED.

Dated:  New Haven, Connecticut
         June 24, 2020

/s/ Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior U.S. District Judge

28